**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CR-00094-NT |
| | ) | |
| KEON SHINE | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

1. **INTRODUCTION**

The Defendant Keon Shine stands convicted of a single count of Felon in Possession of a Firearm in violation of Title 18, United States Code (U.S.C.), § 922(g)(1) along with the penalty provision of 18 U.S.C. § § 924(a)(8) as applicable.  On July 29, 2024, Mr. Shine, pursuant to written plea agreement, pleaded guilty before this Honorable Court to the count.  Prior to the plea of guilty the Government distributed, and Mr. Shine agreed to, the Prosecution Version (ECF No. 40) and this was accepted by this Honorable Court.  The Prosecution Version contained a factual basis for the plea.

Mr. Shine, along with his counsel, have reviewed the Revised Presentence Investigation Report ("PSR") and previously submitted objections which will be addressed. Since speaking to Mr. Shine, he no longer wishes to proceed on Objections #2 and #3 as outlined in the Addendum to the Presentence Report.

Mr. Shine asks this Honorable Court to sentence him to a sentence below the sentencing guidelines recommended in this case in paragraph 60 of the PSR.  Further, Mr. Shine welcomes any period of supervised release imposed. Undersigned counsel

1

has reviewed the proposed conditions or release contained on pages 23-26 of the PSR with Mr. Shine.  Mr. Shine understands these conditions and agrees to abide by them or any other condition imposed by this Honorable Court.

## 2.  <u>THE SENTENCING GUIDELINES UNDER 18 U.S.C. § 3553</u>

In fashioning a sentence, a district court must first "use the Sentencing Guidelines to calculate a recommended sentencing range and then consider whether a guideline sentence is appropriate in light of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Vázquez*, 724 F.3d 15, 28-29 (1st Cir. 2013).   "[A] sentencing court ordinarily should begin by calculating the applicable guideline sentencing range; then determine whether or not any departures are in order; then mull the factors delineated in 18 U.S.C. § 3553(a) as well as any other relevant considerations; and, finally, determine what sentence, whether within, above, or below the guideline sentencing range, appears appropriate." *United States v. Pelletier*, 469 F.3d 194, 203 (1st Cir.2006).   The overarching consideration for the Court at sentencing is found in the Parsimony Clause, which provides that the Court should impose a sentence "sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in 18 U.S.C. § 3553(a)(2)."  See *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

Section 3553(a)(2) describes the goals of sentencing as: "(A) to reflect the seriousness of the offense; promote respect for the law and provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care or other correctional treatment in

2

the most effective manner." In determining what sentence will best achieve these purposes in each individual case, the Court must consider the following factors: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the kinds of sentences available and the applicable sentence under the guidelines; (iii) pertinent policy statements issued by the sentencing commission; (iv) the need to avoid unwarranted sentence disparities among similar defendants guilty of similar conduct; and (v) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a)(1), (a)(3)-(a)(7).

The advisory Sentencing Guideline range is just one factor among all the other statutory factors to be considered by the Court in imposing a sentence. As the Supreme Court explained, the sentencing judge should "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the Court] may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Some of these relevant aforementioned factors will be discussed below next.

3. **APPLYING THE 18 U.S.C. § 3553(a) FACTORS TO KEON SHINE**

A. **The Nature And Circumstances Of the Offense**

The offense conduct is accurately summarized in paragraphs 4-6 in the PSR. Mr. Shine was taken into custody on June 27, 2023 in Lewiston, Maine for illegally possessing a firearm. On June 29, 2023, Mr. Shine was also arrested via a warrant for violation of his federal supervised release. (PSR 36). Further it appears from the Judgement In a Criminal Case (Defense Exhibit 1), the defendant began his federal custody in the violation of release case (1:23-cr-10133-IT-1) on or about June 30, 2023.

3

Mr. Shine, a convicted felon, has taken full responsibility for possessing the firearm in this case. Noteworthy, also is that Mr. Shine's acceptance of responsibility began not only by virtue of his guilty plea, but almost immediately after his detainment. After detainment, Mr. Shine waived his constitutional rights and admitted complete control and ownership of the firearm when interviewed by law enforcement.

Next,  Mr. Shine asks this Honorable Court to consider the following reasonable inference and facts found in the PSR.   As the PSR implies, there are no allegations the firearm in this case was ever brandished, displayed or used in furtherance of any crime by Mr. Shine.  Instead, the firearm was found safely secured inside a center console inside a motor vehicle.   Simply put the firearm, though contraband, was not left out in a negligent or reckless manner whereby someone could have been injured.

Finally, Mr. Shine respectfully requests this Honorable Court to consider Mr. Shine was already to some extent punished, for what it is worth, in part for possessing this firearm in his Violation of Release case (Defense Exhibit 1). On April 2, 2024, a final hearing regarding Revocation of Supervised Release as to Keon Shine was held in U.S. District Court in Boston. At this hearing, Mr. Shine stipulated to/admitted to among other violations: Violation I of Mandatory Condition 1 (committed another crime) and Violation III of Special Condition 3 (possession of a firearm). That Honorable Court revoked supervised release and sentenced Mr. Shine to twelve (12) months and one (1) day with credit for time served from June 30, 2023, concurrent on all counts, and 2 years of Supervised Release, concurrent on all counts, with standard and special conditions.

4

**B. The History and Characteristics of the Defendant.**

Mr. Shine stands before the court as a thirty-five (35) year old African American male with a lengthy criminal history.    As the PSR reports, Mr. Shine grew up in an impoverished part of Boston without the consistent presence of a father in his life. (PSR 44-45, 75). Mr. Shine respectfully asks this Honorable Court to consider the role these facts played in Mr. Shine's development.

Studies have been conducted which have concluded that African American children have a higher propensity to engage in delinquent behaviors if their father is absent during their lives. (Defense Exhibit 2).  Moreover, the consequence of paternal absence is further compounded by the unique challenges faced by such families, including the issue of poverty and other forms of marginalization.

Mr. Shine stands before this Honorable Court as a product of the lack of father figure, the need to find acceptance in and associating with unhealthy male individuals, and the marginalization due to race and poverty.   These factors were arguably further compounded by the age, 12, in which Mr. Shine became involved in the criminal justice system (PSR 72).  Mr. Shine submits, he has only recently obtained the necessary insight to why he continues to be involved in the criminal justice system.  More importantly he now has insight on why he no longer wants to be involved in the criminal justice system.

Defense Exhibit 3 and  4 reflect Mr. Shine's current insight on why he yet again stands before a court facing sentencing. Most telling is Mr. Shine's recent insight which came while being held in pretrial confinement and having to explain to his two youngest children why is currently in jail.  His two youngest children are now at an age

5

to notice and comprehend Mr. Shine's absence in their lives and his current presence in jail.  Through almost daily calls with these children, Mr. Shine now finally recognizes he himself has started to become the absent father he once longed for.  With this insight he vows to accept his punishment in this case and when released, to live a law-abiding life.  This will allow him to an involved father and a role model especially for his sons.

Next Mr. Shine submits to this Honorable Court, there are elements in the PSR which suggest he does have the requisite rehabilitative potential to become a law-abiding citizen during and after his inevitable supervised release.  First Mr. Shine dropped out of high school in the 9th grade. (PSR 54).  While this ordinarily would not be a positive factor, Mr. Shine now recognizes the need to attain his GED.  As such. Mr. Shine has made obtaining his GED a goal which arguable demonstrates he has a plan which will assist him in the future. Next Mr. Shine does have a history of paying child support for his oldest son. (PSR 58).  Mr. Shine's history of paying child support is a positive fact.  Further, Mr. Shine fully understands he will be expected to pay child support upon his release.

Also, Mr. Shine does have community supports. (PSR 46).  The PSR notes Mr. Shine's mother lives in the greater Boston area.  Further, the mother of Mr. Shine's two youngest children also is in Mr. Shine's life and will be when he is ultimately released into the community.  Finally, Mr. Shine does have remorse for his conduct in this case.  His incarceration for the last year has allowed him to reflect on his decisions.   As Mr. Shine indicated on why he possessed the firearm in Defense Exhibit 4 he states: '[n]ot fully understanding that I am stronger and safer without that false sense of security, which really makes it more dangerous for me and others around me."

6

4. **CONCLUSION**

Mr. Shine stands before this Honorable Court guilty of what he recognizes is a serious offense. Today, he remorseful for his actions, and recognizes how this kind of conduct impacts society and his family. Mr. Shine seeks the chance, once released, to abide by supervised release and be a law-abiding citizen. Accordingly, Mr. Shine asks this Honorable Court to sentence him to a sentence below the Guideline Sentence outlined in paragraph 60 in the PSR.

**Dated this 18th day of February 2025**.

/s/ Matthew A. Crockett
Counsel for Defendant Keon Shine

CERTIFICATE OF SERVICE

I do hereby certify that on the above date I attempted to make service of the above pleading by electronically filing the same using the Court's EM/ECF system.

.

/s/ Matthew A. Crockett
Counsel for Defendant Keon Shine